IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARIA QUINTANILLA | : | CIVIL ACTION |
| v. | : : : | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | : : | NO. 17-5734 |

O P I N I O N

JACOB P. HART  　　　　　　　　　　　　　　　DATE: 1/8/19
UNITED STATES MAGISTRATE JUDGE

　　　Maria Quintanilla brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). She has filed a Request for Review to which the Commissioner has responded. As set forth below, I will deny Quintanilla's Request for Review, and affirm the decision of the ALJ.

I.　　Factual and Procedural Background

　　　Quintanilla was born on April 12, 1952. Record at 209. She completed high school. Record at 225. She worked in the past at the mechanic shop she owned with her husband. Id. On August 2, 2013, Quintanilla filed an application for DIB. Record at 209. In it, she alleged disability since May 1, 2010, on the basis of impairments to her back and neck, a lung impairment, and dizziness. Record at 224.

　　　Quintanilla's application for benefits was denied initially and upon reconsideration. Record at 77, 89. On July 1, 2014, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 98. A hearing was held on March 22, 2016. Record at 44. On May 12, 2016, however, the ALJ issued a written decision denying benefits. Record at 31.

The Appeals Council denied Quintanilla's request for review on June 19, 2017, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. Quintanilla then filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra, at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity

2

>and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 CFR §404.1520 (references to other regulations omitted).

III.     The ALJ's Decision and Quintanilla's Request for Review

In her decision, the ALJ found that Quintanilla suffered from the severe impairment of degenerative disc disease. Record at 33. She found that Quintanilla also suffered from asthma, but that it had not imposed more than a slight limitation on her ability to work, and was therefore not severe. Id. The ALJ also found that no impairment or combination of impairments met or medically equaled a listed impairment. Record at 34.

The ALJ determined that Quintanilla retained the residual functional capacity ("RFC") to engage in the full range of light work. Record at 34. Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Quintanilla's past work was most like that of a retail store manager, and that she could perform that work as it was generally performed. Record at 37. She concluded, therefore, that Quintanilla was not disabled. Record at 38.

In her Request for Review, Quintanilla argues that the ALJ erred in failing to recognize that her past work was a composite job, so that it was not permissible to find that she could return to it "as it is generally performed." She also maintains that the ALJ erred in failing to find that she suffered from the severe impairments of carpal tunnel syndrome and right cervical radiculopathy.

IV.    Discussion

A.    Composite Jobs

A "composite job" is one which has significant elements of two or more occupations and, for that reason, has no counterpart in the Dictionary of Occupational Titles ("DOT"). SSR 82-61. POMS, the internal agency program manual, provides this guidance: "The claimants PRW [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant." SSA-POMS: DI 25002.020, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020 (visited January 3, 2019). Because a composite job does not correspond to any one DOT title, agency disability determiners have been advised that a claimant should not be found capable of returning to a prior composite job "as it is usually performed." Id.

However, a claimant may be found capable of performing her prior relevant work "as it is usually performed" when her prior work corresponds to a single DOT title, even though it includes some "functional demands and job duties significantly in excess of those generally required for the job." SSR 82-61. In other words, the mere fact that prior relevant work involved some unusual demands or duties is not sufficient to make it a composite job. A judge in the Eastern District of Pennsylvania has explained that a composite job involves additional "main duties" from another DOT position, rather than merely excessive function with the job duties from one DOT position. Giddings v. Berryhill, Civ. A. NO. 16-6060, 2018 WL 4252426 (E.D. Pa. Sep. 5, 2018).

Quintanilla argues that her job combined features of the job of Manager, Retail Store at DOT 185.167-046 and Automobile-Mechanic Helper, at DOT 620.684-014. She points to this interchange at the hearing:

> QUESTION (by the ALJ): Did you have to lift any heavy weight when you were working at that job?
>
> ANSWER: Yes.
>
> Q: How much weight would you lift? What kind of things would you be lifting?
>
> A: Sometimes I have to help my husband with the transmission or the motors.
>
> Q: Okay. So you might actually assist him when he was working on the cars?
>
> A: Yes, sometimes.

Record at 51-52. She also cleaned the shop and organized the auto parts. Record at 51.

However, the position of Automobile-Mechanic Helper is described as follows in the DOT:

> Assists automobile mechanic in repairing automobiles, buses, trucks, and other automotive vehicles: Raises vehicle to specified level, using hydraulic jack. Removes and disassembles unit, such as engine, transmission, or differential, to be repaired, using handtools and power tools. Cleans unit, using prescribed solvent. Lubricates and washes vehicles.

DOT 620.684-014, https://occupationalinfo.org/62/620684014.html (viewed January 3, 2019).

It is quite obvious that Quintanilla did not claim to perform any of the duties of an Automobile-Mechanic Helper. This is also clear from Quintanilla's application for benefits, in which she noted that she occasionally had to lift 50 pounds, because she "helped [her] husband with car transmission tool box." Id. She specifically denied using machines, tools or equipment. Id.

Instead, the occasional lifting of heavy automobile parts or toolboxes was an excessive functional demand which is not present in the job of retail store manager as it is usually performed, as described in SSR 82-61. Quintanilla has not demonstrated that her past relevant work was a composite job, and she is not entitled to any relief on this basis.

B.    Carpal Tunnel Syndrome and Cervical Radiculopathy

Quintanilla writes in her Request for Review: "The ALJ erred in finding that Ms. Quintanilla's bilateral carpal tunnel syndrome and right cervical radiculopathy were non-severe." Brief at 20. In fact, the ALJ made no finding at all regarding bilateral carpal tunnel syndrome or right cervical radiculopathy. Record at 33-34. This is because Quintanilla was never diagnosed with either disorder.

After Quintanilla was rear-ended in a motor vehicle accident in February 19, 2010, she was seen on March 19, 2010, by Nazar Haidri, MD, a neurologist. Record at 305. In a section titled "Impressions," he wrote that her symptoms were consistent with cervical radiculopathy and bilateral carpal tunnel syndrome. Record at 307. He noted the presence of a positive Tinel's sign, in both wrists. Record at 308. However, he did not make a definitive diagnosis.

However, carpal tunnel syndrome was never mentioned in any of Quintanilla's other medical records. She never underwent a carpal tunnel release surgery or any other treatment for a carpal tunnel disorder. As the ALJ noted, Quintanilla was examined on October 15, 2013, by consulting examiner, Rambhai Patel, MD. Record at 36. Dr. Patel mentioned that Quintanilla complained of arthritis in her hands, but he found no functional limitations in her wrists or hands, and did not diagnose her with any upper extremity impairment. Record at 316, 320, 321.

Nor did the term cervical radiculopathy reappear in Quintanilla's medical records. An April 21, 2010, MRI showed bulging discs at C5/6 and C6/7, causing "very mild stenosis." Record at 339. However, Dr. Firetto, the chiropractor, called Quintanilla's impairment a cervical facet syndrome, causing chronic neck pain and loss of cervical mobility. Record at 313. He did not mention cervical radiculopathy. By contrast, he did report that nerve conduction studies showed lumbar radiculopathy. Record at 311.

As noted, Dr. Patel did not diagnose Quintanilla with any upper extremity impairment or find any upper extremity limitation. Record at 320, 321. Further, in a routine medical examination conducted on January 14, 2014, nurse practitioner Sheila Santiago noted normal sensation and strength in all extremities, and further reported that Quintanilla denied all back pain, and denied tingling or numbness. Record at 334-5.

As Quintanilla points out, she testified at the hearing that she had pain in her shoulders, arms and hands. Record at 56. Her hands and fingers were stiff. Record at 56-7. She had difficulty opening a can or bottle, and had not been able to use a computer for two years prior to the hearing, although she could use a cell phone. Record at 57. The ALJ did not ignore this evidence. Record at 36.

Nevertheless, the ALJ did not find that the evidence fully supported Quintanilla's allegations of limitation. Id. She noted that Quintanilla had no ongoing treatment for her back impairments, including her cervical spine, after 2010. Id. She also noted that, in her application for benefits, Quintanilla reported cleaning the house, cooking full meals for herself and her husband every other day, and washing dishes three times a day. Record at 36, 253. All of this would require extensive use of the hands and arms.

In sum, the ALJ obviously did not err in failing to find that Quintanilla suffered from the two impairments – carpal tunnel syndrome and right-sided cervical radiculopathy – with which she was never diagnosed. More broadly, the ALJ's treatment of the evidence regarding Quintanilla's use of her arms and hands was adequate.

V.     Conclusion

In accordance with the above discussion, I conclude that the decision of the ALJ must be affirmed, and judgment entered in favor of the Commissioner.

BY THE COURT:

/s/ Jacob P. Hart

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

8